IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN A. BERNARD, and DELAVAN HOMES, INC., an Illinois corporation, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 03 C 8645 |
| VILLAGE OF HINSDALE, an Illinois municipal corporation; BOHDAN J. PROCZKO, individually and as Village Manager of Defendant VILLAGE OF HINSDALE; CHARLES F. SCHMIDT, individually and as Building Commissioner of Defendant VILLAGE OF HINSDALE; MATTHEW FIASCONE, individually and as Member of the Zoning Board of Appeals of Defendant VILLAGE OF HINSDALE; STEVEN THAYER, individually and as Member of the Zoning Board of Appeals of Defendant VILLAGE OF HINSDALE; and PAUL ANGLIN, individually and as Chairman and Member of the Zoning Board of Appeals of Defendant VILLAGE OF HINSDALE, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

In their complaint, the plaintiffs, John Bernard ("Bernard") and Delavan Homes, Inc., allege that they were denied equal protection of the law when the Village of Hinsdale (the "village") denied them a permit to build a second residence on Bernard's property. Bernard purchased property at 640 Mills Street (the

"property") in the village in July, 1999. The property consisted of two lots of record, Lots 20 and 21. A single one-story house existed on the property at the time of purchase. It was Bernard's intention to tear down the existing residence and build a new residence on each of the two lots of record that comprised the property.

On October 15, 1999, Bernard received a single building permit for construction of a single family residence on the property. Bernard tore down the existing residence and laid the foundation for the new residence that was to be located exclusively on Lot 21. Thereafter, a dispute arose between Bernard and the village as to whether the property constituted a single zoning lot (upon which only one residence could be built) or two separate zoning lots (upon which a residence could be built on each of the lots of record).

On January 28, 2000, Bernard's attorney sent a letter to the village outlining his position in the dispute. The letter argued that both Lots 20 and 21 were zoning lots. Bernard's letter was reviewed by the Assistant Village Manger / Director of Public Services, Bohdan Proczko ("Proczko"). On March 6, 2000, Proczko issued a staff interpretation in a letter to Bernard. Proczko's letter explained in detail the reasons why the property constituted a single zoning lot under the Hinsdale Zoning Code (the "zoning code"). Because the property was a single zoning lot, Bernard was

2

only entitled to build one residence on the property.  In drafting the letter, Proczko consulted in detail with one of the village's attorneys, Barbara Adams.

Despite Proczko's staff interpretation, Bernard applied for a permit to build a second residence on his property.  That request was denied in a letter from Building Commissioner Charles Schmidt ("Schmidt") on November 29, 2001.  Schmidt's letter stated that the basis for the denial was Proczko's earlier ruling finding that his property constituted a single zoning lot.  After being denied the second permit, Bernard appealed Proczko's staff interpretation to the Hinsdale Zoning Board of Appeals (the "ZBA").  A public hearing took place on March 20, 2002.  At the hearing, Bernard was represented by an attorney and the village was represented by a village attorney.

At the hearing before the ZBA, Bernard and his attorney argued that another individual, Petar Scopu, had received permits to build two residences on property that was substantially similar to that of Bernard.  Similar to Bernard, Scopu owned property in the village that consisted of two lots of record with an existing house and driveway that extended on to both lots.  Scopu, however, had applied for and received permits to build two residences on his property.[1]  The village attorney, Mark Burkland ("Burkland"), and

---

[1] In connection with one of the two permits, Scopu had applied for a variation that would allow him to build a residence on a lot that was approximately 6,700 square feet.  A public hearing was

3

the Chairman of the ZBA, Paul Anglin, voiced their opinion that the Scopu case was both procedurally and substantively distinguishable from the question before the ZBA at Bernard's hearing.

The ZBA voted 3-2 to affirm Proczko's interpretation and issued a decision on April 29, 2002. The three affirming votes were cast by defendants Paul Anglin ("Anglin"), Steven Thayer ("Thayer"), and Matthew Fiascone ("Fiascone"). The ZBA's decision stated that "[a]fter consideration of all of the evidence . . . and after careful and thorough analysis of the applicable provisions of the Hinsdale Zoning Code the [ZBA] finds . . . that the Village Staff correctly interpreted and applied the provisions of the Hinsdale Zoning Code to the applications made by the Applicant."

Bernard did not seek administrative review of the ZBA decision. Plaintiffs filed a complaint in this court alleging a violation of the Equal Protection Clause of the Fourteenth Amendment against the Village of Hinsdale, and Proczko, Schmidt,

---

held on January 19, 2000 concerning Scopu's request for a variation. The record of the proceeding indicates that the issue of whether Scopu's property was a single zoning lot was not raised at any point and the hearing proceeded under the assumption that the individual lot for which he sought a permit was itself a zoning lot. The ZBA voted 7-0 to grant Scopu's request. The ZBA minutes state that Scopu's attorney instructed the ZBA that "the requested variation request is considerably less than the permitted reduction and that the proposed home will comply with all applicable standards of the Zoning Code." As a result, "[m]embers of the [ZBA] concurred that the variation request met the standards for variation." Defendants Fiascone and Anglin voted to grant Scopu a variation. Defendant Thayer was not a member of the ZBA at that time.

4

Fiascone, Thayer, and Anglin in their individual and official capacities.

## Summary Judgment Standard

Summary judgment is appropriate where the record shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Lexington Ins. Co. v. Rugg & Knopp*, 165 F.3d 1087, 1090 (7th Cir. 1999); Fed. R. Civ. P. 56(c). I must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "The nonmoving party must offer something more than a 'scintilla' of evidence to overcome summary judgment . . . and must do more than 'simply show that there is some metaphysical doubt as to the material facts.'" *Roger Whitmore's Auto. Servs. v. Lake County, Ill.*, 424 F.3d 659, 667 (7th Cir. 2005) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## Analysis

Plaintiffs argue that the denial of a second permit to Bernard denied them equal protection of the law because Petar Scopu received two permits to build on similarly situated property.[2]

---

[2] Bernard has argued and set forth facts showing that Scopu's property was similarly situated to his property. Defendants have not disputed these assertions or argued that the two properties are not similarly situated. Therefore, for the purposes of this motion, I will accept Bernard's assertions and assume that the

5

Because plaintiffs do not claim membership in a protected class, this action is a class of one equal protection claim. Defendants, quoting *Hilton v. City of Wheeling*, argue that summary judgment is appropriate because a class of one equal protection claim requires a showing that defendants "deliberately sought to deprive him of equal protection of the laws for reasons of a personal nature . . . . ." 209 F.3d 1005, 1008 (7th Cir. 2000). Plaintiffs concede an absence of evidence of ill will in this case, but correctly point out that they alternatively may establish a class of one equal protection claim by showing that they "ha[ve] been intentionally treated differently from others similarly situated and there is no rational basis for the difference in treatment." *Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); See also *Lauth v. McCollum*, 424 F.3d 631, 634 (7th Cir. 2005) (explaining the two different methods of establishing an equal protection claim).

In stating their claim under the *Olech* standard, plaintiffs argue that the evidence supports a finding of intentional discrimination because "it is clear that the Village and its officials were acting intentionally when they issued Mr. Scopu or his successor in interest two building permits and when they denied Mr. Bernard the right to build on his lot 20." A showing of intentional discrimination under the equal protection clause requires more, however. In a case explaining the intentionality

---

two properties are similarly situated.

requirement in an equal protection claim, the Seventh Circuit stated:

> [I]ntentionality is an ambiguous concept, shading at one end into mere knowledge of likely consequences and at the other into a desire for those consequences. The county health board 'intentionally' treated the plaintiff worse than it treated her predecessors and neighbors in the sense that it knew--it had to know--that its pattern of enforcement was uneven. But it did not 'intentionally' treat the plaintiff worse in the sense of wanting her to be made worse off than those others. And it is the latter sense in which a 'class of one' case requires a showing that government 'intentionally' treated the plaintiff worse than others. In other words, we don't think the Supreme Court in *Olech* intended to overrule *Personnel Administrator of Massachusetts v. Feeney*, which holds that an official 'intends' a consequence when he acts because rather than in spite of it.

*Tuffendsam v. Dearborn County Bd. of Health*, 385 F.3d 1124, 1127 (7th Cir. 2004) (citations omitted); *See also Snowden v. Hughes*, 321 U.S. 1, 8 (1944) ("The unlawful administration by state officers of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination.").

Based on the assumption that Bernard's property and Scopu's property are similarly situated, the events in this case can be characterized in one of two ways. If both properties constitute single zoning lots, defendants properly denied Bernard a second permit and improperly granted one to Scopu. Conversely, if both properties consist of two zoning lots, defendants improperly denied

7

Bernard a second permit and properly granted one to Scopu. Under either scenario, however, plaintiffs have not shown any evidence that could support a finding of intentional discrimination in this case.[3]

Assuming that Scopu was incorrectly granted a second permit, plaintiffs have brought forth no evidence (and I have found none in the record) that suggests this decision was not made in good faith or that defendants intentionally ignored the zoning code so that Scopu or anyone else could receive a permit. If defendants in good faith erroneously granted a Scopu a permit, the equal protection clause does not mandate that they repeat that mistake for Bernard. See e.g. E & T Realty v. Strickland, 830 F.2d 1107, 1114 (11th Cir. 1987) ("The requirement of intentional discrimination prevents plaintiffs from bootstrapping all misapplications of state law into equal protection claims."); Kendrick v. Carlson, 995 F.2d 1440, 1447 (8th Cir. 1993) ("[A] plaintiff asserting an equal protection violation based on unequal application of a facially neutral statute must show intentional discrimination . . . . Were the rule

---

[3] Although Bernard argues that the finding that his property was a single zoning lot is incorrect, I have found nothing in the record to support this argument. Rather, what evidence there is in the record supports the conclusion that this issue was correctly decided by Proczko and the ZBA and that Scopu also should have been denied a second permit. For purposes of this motion, it is unnecessary to resolve this issue, however, because whether the decision to deny Bernard a second permit was correct or incorrect, a failure to show intentional discrimination is fatal to Bernard's claim.

otherwise, if government decisionmakers 'erroneously applied [a statute] in a single case, they could never again apply it correctly without violating equal protection.'") (citations omitted) (quoting *E & T Realty*, 830 F.2d at 1114). The issue of whether the two lots that comprised Scopu's property constituted a single zoning was not raised at any point when Scopu applied for the two permits.[4] The defendants' failure to recognize and adjudicate this issue in Scopu's case, however, does not entitle Bernard to the same failure and the same result.

Alternatively, assuming that defendants erroneously denied Bernard a second permit, there is also no evidence of an equal protection violation in this case. Plaintiffs have not brought forth any evidence (and I have found none in the record) that indicates that defendants' decisions were not made in good faith. When a government official makes an error of judgment that leads to differential treatment in the application of a law, that mistake alone does not constitute intentional discrimination under the equal protection clause. *See Snowden,* 321 U.S. at 8 ("where the official action purports to be in conformity to the statutory classification, an erroneous or mistaken performance of the

---

[4] The fact that defendants never addressed the issue of whether Scopu's property was a single zoning lot is arguably evidence that the Bernard and Scopu were not similarly situated individuals for purposes of equal protection analysis. That issue, however, has not been raised by defendants as a grounds for summary judgment.

9

statutory duty, although a violation of the statute, is not without more a denial of the equal protection of the laws."); *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441, 447 (1923) (cited by *Olech* and stating "mere errors of judgment do not support a claim of discrimination, but that there must be something more -- something which in effect amounts to an intentional violation of the essential principle of practical uniformity."); *Ciechon v. City of Chicago*, 686 F.2d 511, 522 (7th Cir. 1982) ("error or mistake in the application of the law [does not by itself] give rise to an equal protection claim"). The decision denying Bernard a second permit was made in reliance on the ZBA affirmation of Proczko's staff interpretation finding that Bernard's property was a single zoning lot. Proczko's interpretation was detailed, reasoned, and made in consultation with a village attorney. The deposition and affidavits of Proczko, Thayer, Anglin, and Fiascone all state that their decisions were based upon an attempt to apply the zoning code to the situation and nothing more. Bernard and his attorney did raise the issue of the Scopu property at the hearing, but the ZBA was counseled that the situation was distinguishable. Under these circumstances, there is no evidence to support a conclusion that defendants were attempting to treat Bernard worse than Scopu. *See Tuffendsam*, 385 F.3d at 1127.

Bernard has failed to show that there is a genuine issue of material fact as to whether defendants intentionally discriminated

10

against him. Therefore, I grant defendant's motion for summary judgment.

ENTER ORDER:

_Elaine E. Bucklo_
**Elaine E. Bucklo**
United States District Judge

Dated: January 31, 2006